✓ FILED ___ ENTERED
____ LOGGED _____ RECEIVED

10:02 am, Jul 28 2026

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____DG_____Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE PERSON OF TATAW OBENSON FOR COLLECTION OF A DNA SAMPLE** | Case No.　1:26-mj-01512 -JMC |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Officer Jacob Pfaff of the District of Columbia Metropolitan Police Department, being first duly sworn, hereby depose and state as follows:

**PERSON TO BE SEARCHED**

1.　I submit this affidavit in support of an application for a search warrant to obtain Deoxyribonucleic Acid ("DNA") in the form of saliva from **Tataw Obenson** (the "**SUBJECT PERSON**"), a male born in 1998, with a Social Security number ending in 5718, a PDID of 782-459, and an SID of 4376252. A photograph of the **SUBJECT PERSON** is included in Attachment A.

2.　I seek this warrant to obtain evidence related to an investigation into violations of D.C. Code Section 22-4503(a)(1), that is Unlawful Possession of a Firearm (Prior Conviction) (the "**SUBJECT OFFENSE**"). Specifically, on or about October 10, 2025, within the District of Columbia, **Tataw Obenson**, knowing he had previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, owned, kept, and had within his possession and control, two firearms.

3.　The requested warrant would authorize members of the Bureau of Alcohol, Tobacco, & Firearms, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to obtain DNA saliva samples

1

from the **SUBJECT PERSON**.

4.     The Court has authority to issue this warrant, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, because the **SUBJECT PERSON** is presently located within the District of Maryland.

## AGENT BACKGROUND

5.     Your Affiant, Officer Jacob Pfaff, has been a sworn police officer with the Metropolitan Police Department for approximately three years. Your Affiant is currently assigned to the Crime Suppression Team ("CST"), a specialized enforcement unit within the Sixth District of the Metropolitan Police Department that focuses its efforts on the investigation and suppression of violent crime, illegal firearms offenses, narcotics trafficking, and other criminal activity occurring within the District of Columbia.

6.     As a member of the District of Columbia Metropolitan Police Department, I am authorized to apply for a search warrant from the United States District Court of Maryland. Federal Rule of Criminal Procedure 41(a)(2)(C) defines a "federal law enforcement officer" as: "a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant."  Section 60.1 of Title 28 of the Code of Federal Regulations "authorizes certain categories of federal law enforcement officers to request the issuance of search warrants under Rule 41, Fed. R. Crim. P., and lists the agencies whose officers are so authorized." 28 C.F.R. § 60.1. Pursuant to 28 C.F.R. § 60.2(d), "[a]ny officer of the Metropolitan Police Department, District of Columbia" is "authorized to request the issuance of a search warrant."  Section 60.3(b)(1) of Title 28 of the Federal Rules of Criminal Procedure also provides that the District of

Columbia Metropolitan Police Department has "law enforcement officers within the categories listed in § 60.2."

7. Through training and experience, your Affiant has participated in numerous investigations involving firearms offenses, narcotics distribution, assaults, robberies, and other felony offenses. Your Affiant has received training in crime scene preservation, evidence recovery, search warrant execution, and the identification, collection, and preservation of biological evidence for forensic analysis. Your Affiant knows through training and experiences that individuals frequently leave biological material, including saliva, skin cells, blood, hair, and other DNA evidence, on items they touch, possess, wear, use, or discard.

8. Your Affiant further knows that DNA evidence recovered from evidentiary items can be compared to known DNA samples obtained pursuant to a search warrant in order to identify or exclude individuals connected to criminal activity. Your Affiant has participated in investigations where DNA evidence was successfully used to establish connections between individuals and firearms, vehicles, and other items of evidentiary value.

9. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included every detail or every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated. Summaries and

descriptions, including quotations of recorded conversations (if any) are based on a review of audio recordings and draft transcripts.

**PROBABLE CAUSE**

10.     The offense occurred on October 10th, 2025, at 20:06 hours, in the 5000 block of C Street Southeast. Officers with the Metropolitan Police Department of Washington, D.C., were working as Task Force Six in support of operation "Make D.C. Safe and Beautiful." Officer Bryson (driver), Officer Pfaff (front passenger) and Officer Henson (rear passenger) were wearing fully issued Metropolitan Police Department attire, utilizing a fully marked Metropolitan Police Department vehicle, and were assisted by multiple federal agencies.

11.     Officers made a left turn onto the 5000 block of C Street Southeast from 51st Street Southeast, when they observed a Toyota Corolla with no front tag backed into a parking spot in the parking lot of 5048 C Street Southeast. *See* M.D. Transportation Code § 13-411 (2025) ("[O]ne plate shall be attached on the front and the other on the rear of the vehicle"). The Toyota Corolla was running and occupied by two individuals. Officers pulled into the parking lot to investigate the state the vehicle was registered to. As officers pulled into the parking lot, the two occupants quickly exited the Toyota Corolla. Officers then stepped out of the vehicle to engage in consensual conversation with the driver of the Toyota Corolla, later identified as the **SUBJECT PERSON**. The **SUBJECT PERSON** was asked by officers the state that the vehicle was registered to, to which the **SUBJECT PERSON** stated Maryland, as he began to try and walk away. Officers detained the driver to further investigate the violation.

12.     As officers spoke with the **SUBJECT PERSON** to advise him of the legal obligation to display both Maryland tags on the vehicle, Officer Pfaff began to look in the Toyota

Corolla for the other license plate through the rear passenger window. As Officer Pfaff looked into the rear passenger seat of the Toyota Corolla, in plain view, he observed two handguns inside of a denim open top purse. The purse was removed from the Toyota Corolla. The purse was placed on the hood of the vehicle and subsequently searched. In addition to the firearms, inside of the purse was a pill bottle labeled with the name of the other occupant in the car. The pill bottle and purse were not recovered.

13.     The handguns were recovered by Officer Henson and processed by Crime Scene Unit 61. The first handgun recovered was a Polymer 80 firearm bearing no serial number and equipped with a seventeen round ammunition feeding device, loaded with 7 rounds of 9-millimeter ammunition. The second handgun recovered was a Glock 44 bearing serial number AEEB126 equipped with a ten round feeding device loaded with 5 rounds of 22 caliber ammunition, as well as an additional round loaded into the chamber.

14.     At the time of recovery, the firearms appeared to be fully functional and operational, were designed to expel a projective by means of explosion, had a barrel length less than 12 inches, and were designed to be fired by a single hand.

15.     The passenger of the vehicle was also detained after the firearms were discovered. After a search of the vehicle, an officer found an additional round of .22 caliber in the same purse that the firearms were found.

16.     As the passenger of the vehicle was detained, the **SUBJECT PERSON** spontaneously uttered, "They're mine," claiming the firearms located inside the vehicle. It should be noted that no other illegal items or contraband were found inside the vehicle.. It should also be noted that the **SUBJECT PERSON** used the plural "they're," indicating that he was claiming

multiple items, and not a singular item inside the vehicle.

17.    The location of the purse was directly behind the passenger seat diagonal from the driver seat.  This indicates that the purse was placed from the driver side of the vehicle, and it would not have been feasible to place it there from the passenger seat, considering the passenger was eight months pregnant, which constricted her movement. Based on the location of the purse, it was not reasonable to believe that the passenger was in possession of the purse containing the firearms. Additionally, the passenger was not aware of the firearms inside of the vehicle when spoken to. The **SUBJECT PERSON** stated on scene the vehicle belonged to his mother. With the information officers had on scene, it was reasonable to believe the **SUBJECT PERSON** was the primary owner of the firearms and placed them in the purse onto the back passenger seat.

18.    A query of a law enforcement database revealed that the **SUBJECT PERSON** had a fully extraditable warrant from the US Marshals service.

19.    A further investigation into the **SUBJECT PERSON's** criminal history revealed that in 2018, he was sentenced to 84 months in prison for possession of a firearm in furtherance of a crime of violence (brandishing), making him a felon.

20.    On scene, Officer Bryson contacted a Crime Research Specialist ("CRS") at the Real Time Crime Center ("RTCC") to ascertain if the **SUBJECT PERSON** had a Concealed Carry License for the District of Columbia, to which a negative result was given. The **SUBJECT PERSON** did not have any firearms registered to him in the District of Columbia.

21.    In the context of investigating the crime, evidence was collected, including a Glock 44 and a Polymer 80 ghost gun.

22.    On October 14, 2025, District of Columbia Metropolitan Police Department Crime

Scene Technician Dustyn Hugee obtained wet/dry swabs of both recovered firearms and accompanying magazines.

23.    Based upon the facts of the case, there is an evidentiary nexus between the recovered evidence and the individual whose DNA is sought. The **SUBJECT PERSON** stated "They're mine," after the firearms were recovered. Therefore, it is likely that the evidence will have DNA evidence that would link the evidence to the **SUBJECT PERSON**. The buccal swab is necessary to see if the DNA swabbed from the firearm matches the **SUBJECT PERSON**'s DNA.

24.    This **SUBJECT PERSON** is currently located in the District of Maryland, and his person will be sampled for potential DNA. The United States now seeks to obtain a buccal swab, i.e., a swab of the inner cheek containing saliva and cheek cells, from the subject to compare the **SUBJECT PERSON's** DNA to any interpretable/usable DNA profile found on this physical evidence. A match between, inclusion of, or exclusion of the subject's DNA and DNA on the evidence would make a fact of consequence (e.g., the identity of the subject) more or less probable.

25.    According to a January 11, 2019, statement from the DNA Technical Leader at the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearm and Explosives Forensic Science Laboratory, based on the current methods in use, at least one DNA profile suitable for comparison purposes is obtained from 70% of the firearms analyzed by that laboratory. These statistics incorporate results from samples from the firearm and magazine.

## REQUEST FOR A SEARCH WARRANT

26.    Given the facts set forth above, there is probable cause to believe that the **SUBJECT PERSON** was involved in the commission of the **SUBJECT OFFENSE**.  I further

believe there is probable cause to obtain the DNA from the **SUBJECT PERSON** as evidence of the crime, and to compare the **SUBJECT PERSON**'s DNA to unknown DNA samples recovered during the investigation.

WHEREFORE, I respectively request that the Court issue a search warrant authorizing members of the Bureau of Alcohol, Tobacco, and Firearms, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to obtain DNA samples from the **SUBJECT PERSON**, so that the those DNA samples may be compared to evidence collected during the course of the investigation.

_Jacob Pfaff_
Officer Jacob Pfaff
Sixth District Crime Suppression Team
D.C. Metropolitan Police Department

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this 16th day of June, 2026.

J. MARK COULSON
United States Magistrate Judge



1:26-mj-01512 -JMC

## ATTACHMENT A

**TATAW OBENSON,** a male born in 1998, with a Social Security number ending in 5718, a PDID of 782-459, and an SID of 4376252, who is presently in the District of Maryland, specifically: Chesapeake Detention Facility 401 E Madison St., Baltimore, MD 21202
.

1:26-mj-01512 -JMC

## ATTACHMENT B

### Description of Items to be Seized

A DNA standard for **Tataw Obenson** which will be obtained via four (4) buccal swabs from the interior of **Tataw Obenson's** cheek.